**In re SCHWINN BICYCLE CO., et al., Debtor.**

**Schwinn Plan Committee, Plaintiff,**

**v.**

**AFS Cycle & Co., Ltd., et al., (Fairly Bike Mfg. Co., Ltd.), Defendants.**

**Bankruptcy Nos. 92–B–22474 to 92–B–22482.**

**Adversary No. 94–A–01618.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 15, 2000.

---

Liang–Houh Shieh, Taipei, TA, for Plaintiff.

Mark K. Thomas, Brian M. Graham, Chicago, IL; Howard Feller, Dion W. Hayes, Richmond VA, for Defendant.

## MEMORANDUM OPINION

JACK B. SCHMETTERER,
Bankruptcy Judge.

This matter is before the court on the motion of Defendant Fairly Bike Manufacturing Co., Ltd. to Amend the December 13, 1995 Decision and Default Judgment entered by the undersigned Judge and for other Relief. For reasons discussed herein, that motion is by separate order denied.

### PROCEDURAL HISTORY

On October 7, 1992, Schwinn Bicycle Company ("Schwinn") and several related entities filed petitions for relief in this Court under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On June 6, 1994, this Court confirmed Schwinn's Plan of Liquidation (as confirmed, the "Plan"). Pursuant to Article IX of the Plan, the Schwinn Plan Committee was established to perform various tasks necessary to implement the Plan. Under Plan Section 9.2 and paragraph 34 of the Order confirming the Plan, that Committee was authorized to prosecute any proceedings which could be brought on behalf of Schwinn's bankruptcy estate and to recover any transfers to which the debtor might be entitled under the Code, including preferences.

Pursuant to an administrative order entered in the bankruptcy case, the Committee was also authorized to compromise without court approval a certain range of preference claims. One such claim that the Committee sought to compromise was with Montague Corporation a prepetition vendor of Schwinn and a Massachusetts corporation. Pursuant to that authority, the Committee did not file an adversary complaint against Montague to recover preferences. Rather, in response to a pre-complaint demand letter from Committee's counsel, Montague reached a settlement of its preference exposure with the Committee before the Committee filed its omnibus preference complaint.

In October, 1994, the Committee filed its omnibus Complaint seeking to recover preferential transfers from certain defendants, including Fairly Bike Manufacturing Company, Ltd. ("Fairly"), a Taiwan corporation. In its Complaint, the Committee sought to recover from Fairly two (2) prepetition wire transfers totaling $111,142.95. Fairly did not file an answer in response to the Committee's Complaint. Rather, Fairly filed a Motion to Dismiss the Complaint for lack of subject matter and personal jurisdiction, inadequacy of service of process and improper venue. After several hearings in connection with Fairly's Motion to Dismiss, on December 13, 1995, this Court denied Fairly's Motion to Dismiss on all grounds. *Schwinn Plan Committee v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.),* 190 B.R. 599 (Bankr.N.D.Ill.1995).

On March 25, 1996, after evidence hearings in connection with the Committee's motion for default judgment against Fairly, and on notice to Defendant's counsel, this Court entered Findings of Fact, Conclusions of Law, and a Default Judgment against Fairly in the amount of the Committee's preference claim of $111,142.95 plus interest. Fairly filed a Notice of Appeal from this Court's Default Judgment on November 19, 1996. The Committee moved to dismiss Fairly's appeal on grounds that the District Court lacked jurisdiction because Fairly's Notice of Appeal was untimely filed and also on grounds that Fairly lacked standing to appeal because it did not file an Answer or participate at the hearings. On June 1, 1997, the District Court granted the Committee's Motion and dismissed Fairly's appeal. *Fairly Bike Mfg. Co., Ltd. v. Schwinn Plan Committee (In re Schwinn Bicycle Co.),* 209 B.R. 887 (N.D.Ill.1997). Fairly subsequently appealed the District Court's decision to the Seventh Circuit Court of Appeals.

After the filing of Fairly's appeal to the Seventh Circuit, Fairly's Chicago counsel sought and obtained leave from the Court of Appeals to withdraw as counsel for Fairly. On March 25, 1998, the Court of Appeals suspended Fairly's appeal and ordered Fairly to obtain new counsel admitted to the Seventh Circuit within thirty (30) days. Fairly failed to comply with the Court of Appeals' March 25, 1998 Order. Accordingly, on October 25, 1999, the Court of Appeals dismissed Fairly's appeal for lack of prosecution.

On or about July 13, 1999, over three and one-half years after the Default Judgment was entered against Defendant, Fairly filed its Motion to Amend December 13, 1995 Decision and Default Judgment. Fairly seeks relief based on the following four arguments, (the first three arguments referencing statements in the Opinion of December 13, 1995, the fourth argument referencing the Findings of Fact and Conclusions of Law entered with respect to the Default Judgment of March 25, 1996):(1) Fairly's Taiwan counsel had not argued that Taiwan is part of the People's Republic of China though the Opinion said that he had so argued; (2) Fairly did not request removal or transfer of this action to Taiwan, but instead requested that the action be dismissed; (3) APS International Ltd. does not specialize in international service; and lastly (4) Fairly was not a creditor of Schwinn but rather was simply a supplier to a company called Montague, thus any debt Fairly owed to Schwinn was satisfied when the Committee and Montague entered into a Settlement Agreement.

The first three arguments of Fairly's Motion to Amend the December 13, 1995 Opinion are untimely under Fed. R.Bankr.P. Rule 9024, Fed.R.Civ.P. Rule 60(b)(1), and Fairly has not met the threshold requirements under that Rule to vacate the default judgment of March 25, 1996. Assuming arguendo that Fairly had met those threshold requirements, it has not pleaded any factual basis to show as a matter of law that its debt to Schwinn was satisfied by the Montague settlement so as to require vacation of the default judgment under Rule 60(b)(5).

## JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

Fairly seeks to alter or amend the December 12, 1995 opinion and to vacate the March 25, 1996 default judgment entered against it. Federal Rule of Bankruptcy Procedure 9024 which adopts Federal Rule of Civil Procedure 60 governs relief from a final judgment. *Britton v. Swift Transportation Co.*, 127 F.3d 616 (7th Cir.1997). Accordingly, this action will be analyzed under Rule 60(b) which provides in pertinent part as follows:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment

should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding ... or to set aside a judgment for fraud upon the court.

█ Rule 60(b) contains five clauses, (b)(1)—(b)(5), delineating specific grounds for obtaining relief. *Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d 981, 983 (7th Cir.1989). In addition Rule 60(b) contains a catchall clause in Rule 60(b)(6). *Id.* Rule 60(b)(6) relief is an extraordinary remedy and is granted only in exceptional circumstances. *Dickerson v. Board of Educ. of Ford Heights, Ill.,* 32 F.3d 1114, 1116 (7th Cir.1994). Motions under Rule 60(b) are subject to varying time limits. *Wesco,* 880 F.2d at 983. For example, motions alleging grounds for relief delineated in (b)(1)—(b)(3) must be brought within one year after the entry of the final judgment. *Id.* In contrast, motions brought under (b)(4)—(b)(6) are not subject to an express time limit but must still be filed within a reasonable time following the entry of judgment. *Id.*

█ The first five clauses and the catchall clause are mutually exclusive. *Webb v. James,* 147 F.3d 617, 622 (7th Cir.1998). "Thus, if the asserted grounds for relief fall within the terms of the first [five] clauses of Rule 60(b), relief under the catchall provision [60(b)(6)] is not available." *Brandon v. Chicago Board of Education,* 143 F.3d 293, 295 (7th Cir.1998). Because it is concluded, as discussed below, that Fairly's claims for relief fall within the ambit of sections (b)(1) and (b)(5), Fairly is not entitled to relief under Rule 60(b)(6).

█ In addition to the six enumerated grounds for relief, the court can entertain an independent action to relieve a party from relief, or to set aside a judgment for fraud upon the court. An independent action under Rule 60(b), however, is only available to prevent a grave miscarriage of justice. *United States v. Beggerly,* 524 U.S. 38, 47, 118 S.Ct. 1862, 1867, 141 L.Ed.2d 32 (1998); *Porter v. Chicago School Reform Board of Trustees,* 187 F.R.D. 563, 566 (N.D.Ill.1999). Fairly's allegations do not demonstrate that it can meet this demanding standard.

### REQUEST TO AMEND THE DECEMBER 13, 1995 DECISION

Fairly's first three arguments seek amendments to the December 13, 1995 decision. Fairly alleges that the Court erred in its judgment making the following factual and legal statements in its opinion of December 13, 1995: that Fairly's counsel said Taiwan is part of the People's Republic of China; that Fairly requested this Court to transfer the preference action to Taiwan; and that APS International Ltd. specializes in international service. The allegations fall squarely within the purview and requirements of Rule 60(b)(1). See *Bank of California v. Arthur Andersen & Co.,* 709 F.2d 1174, 1176–77 (7th Cir.1983).

█ Rule 60(b)(1) provides for relief from final judgments that are the product of mistake, inadvertence, surprise or excusable neglect. This provision applies to alleged errors by judicial officers as well as parties. See *Buggs v. Elgin, Joliet & Eastern Ry. Co.,* 852 F.2d 318, 322 (7th Cir.1988); *Bank of California v. Arthur Andersen & Co.,* 709 F.2d 1174, 1176 (7th Cir.1983). Accordingly, Fairly's motion concerning the first three assertions of factual mistakes in the published opinion is subject to the one year time limitation applicable to motions under Rule 60(b)(1). As the one year time limit is jurisdictional and cannot be extended, *Wesco,* 880 F.2d

at 985, this Court lacks jurisdiction even to consider the merits of the first three arguments.

■ Even if this action were an independent action under Rule 60(b), the asserted errors would not rise to the level of grave miscarriage of justice necessary for any independent action to go forward. Indeed, if the alleged factual errors in the Opinion were so egregious, Fairly would not have waited over three years to seek a remedy.

Unhappily for moving counsel, he argued in his briefs leading up to that Opinion that the Hague Convention dealing with service of process applied to the Taiwan defendant Fairly because China is signatory thereto and Taiwan was said to be part of China, and therefore parties there are protected by the Convention. That is why the Opinion discussed the question whether service of process should have been made under the Hague Convention or otherwise. Given current developments in Taiwan, it is understandable that an attorney there might not want to be associated with an argument that Taiwan is part of the People's Republic of China, and might want the opinion changed to avoid future embarrassment. With all sympathy for that interest, we would not change the opinion if we could because the whole discussion and reasoning relates to counsel's argument at the time.

### REQUEST TO VACATE MARCH 25, 1996 DEFAULT JUDGMENT

In addition to seeking to amend the December 13, 1995 decision, Fairly seeks to vacate the March 25, 1996 default judgment that was entered against it. Fairly's motion to vacate is based on contentions that it was not a creditor of Schwinn but rather only a supplier of Montague. According to Fairly, when Montague and the Committee entered into a preference Settlement Agreement, that Agreement released Fairly as well as Montague. The Montague Settlement Agreement which allegedly releases Fairly provided in relevant part:

1.1 Upon execution of this Agreement, Montague agrees to pay to the Committee the total sum of $20,000.00 (the "Settlement Amount"). The payment shall be in the form of a check made payable to the Schwinn Plan Committee and delivered to Dion W. Hayes, Esquire, at the offices of McGuire, Woods, Battle & Boothe, One James Center, Richmond, Virginia 23219–4030.

1.2 The Committee does hereby remise, release and forever discharge Montague, David Montague, Harry Montague and Ellen Montague, and Montague's present and former agents, employees, and other representatives, and the heirs, executors, administrators, predecessors, successors, and assigns of any on or more thereof, and each of them, from and against any and all debts, demands, causes of action, claims, rights, and any liabilities of any kind whatsoever, both at law and in equity, which the Committee now has or ever has had against Montague including, without limitation the claims that could have been alleged by the Committee in an adversary proceeding to recover alleged preferential transfers made to or for the be of Montague by the Debtor and all claims arising out of or in any way connected to the relationship between the Debtor and Montague.

Montague apparently did pay the Committee the $20,000 as required in that Settlement Agreement.

■ To be relieved from default judgment under Rule 60(b), Fairly must show (1) good cause for allowing the default, (2) quick action to correct the default, and (3) a meritorious defense. *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989).

■ Here Fairly cannot even overcome the first hurdle. It failed to answer the Complaint and has not provided any

reason at all for its default. Failure to show good cause for its default is alone a sufficient basis to refuse to set aside the default judgment. *Pretzel & Stouffer v. Imperial Adjusters,* 28 F.3d 42, 46 (7th Cir.1994). Thus, even if Fairly could present a meritorious defense to the original Complaint, "the existence of such a defense would not require that the default judgment be set aside." *U.S. v. $10,000.00 in United States Funds,* 1995 WL 216871, at *4 (7th Cir.1995). Moreover, Fairly did not respond quickly to correct the default. Over three and one-half years had elapsed after entry of the default judgment before Fairly filed this instant motion to vacate. Clearly, Fairly cannot meet the threshold requirement for vacating a default judgment under Rule 60(b).

█ Assuming arguendo that Fairly had met the threshold requirements for setting aside a default judgment, its last argument that its liability was satisfied by another party would have to be analyzed under Rule 60(b)(5) which is not time-barred after one year. Rule 60(b)(5) allows for vacation of a judgment that has been satisfied, released, or discharged. That might, of course, be a meritorious defense. Fairly however cannot prove that any debt it owed Schwinn was satisfied by another.

Section 550 of the Bankruptcy Code, Title 11 U.S.C. authorized the Committee to recover transferred property in a preference action. Recovery could be had from both the initial transferee and any secondary transferee, as well as from any entity for whose benefit the initial transfer was made. § 550(a), though only one satisfaction could be had. § 550(d).

Section 547 of the Bankruptcy Code allowed the Committee to avoid transfer of an interest of the debtor in property when (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition;

and (5) that enable such creditor to receive more than such creditor would receive if the case were a case under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 547.

The basis for Fairly's contention that any debt it owed to Schwinn was satisfied appears to be that Fairly was never a creditor of Schwinn as required to constitute a preference but simply a supplier of bikes to Montague. When the Settlement Agreement was executed by the Committee and Montague in which Montague and its representatives were released, Fairly argues that as an alleged supplier to Montague it was covered by those terms.

That argument cannot have merit because the Court has already decided that issue in the Findings of Fact and Conclusions of Law that were entered with respect to the default judgment. Fairly never presented a substantive defense to the preference action but instead focused on jurisdiction. Fairly's counsel could have learned from its client or engaged in discovery to learn the exact nature of Fairly's relationship with Schwinn and Montague and prove it before the default judgment was entered. The fact that Fairly's counsel and its client decided to focus on jurisdiction and not a substantive defense will not now be allowed be used as a basis for vacating the default judgement over three years later.

The Committee's counsel, in response to the Court's request, has filed an affidavit in connection with the present motion to vacate the judgment. Counsel avers that to the best of his knowledge, the alleged preference payments received by Montague from Schwinn had no relationship to Fairly, and says that Schwinn had separate commercial relationships with Fairly and Montague. He lastly states that in the course of those relationships, both Fairly and Montague were creditors of Schwinn in the ninety (90) days before Schwinn's bankruptcy filling and received separate preferential transfers during that

period on antecedent debts owing from Schwinn.

To support its argument that there was a satisfaction concerning it, Fairly attached several exhibits. One exhibit Fairly provided is a letter from Daniel J. Garramons, Jr., Vice President, General Counsel & Assistant Secretary of Schwinn addressed to Montague. In the letter Schwinn agreed to make certain payments directly to Montague's office for various purchases by Schwinn. Although the payments were to be made to Montague's office, on page 1 of that letter the payment amounts are divided into two columns one labeled "For Fairly" and one "For Montague." That letter if presented three and one-half years ago might have been pertinent, but could have been read to support an inference that separate payments each constituting preferences were made both to Fairly or its benefit and to Montague.

Neither the affidavit of Committee's counsel nor new documents belatedly offered by Fairly can be considered. More to the point, two invoices signed by Fairly's president and dated August 18, 1992 and September 15, 1992 listed Schwinn as the purchaser, and also two wire transfers of payments from Schwinn to Fairly totaling $111,142.95, were presented at the default prove-up. Based on this and other evidence presented during that hearing, the Court entered Findings of Fact and Conclusions of Law supporting the Default Judgment. It has concluded therein that Fairly received payments from Schwinn that constituted preferences under 11 U.S.C. § 547(b). Fairly will not now be allowed to argue that its debt has been satisfied based on an argument that it was not a creditor of Schwinn. That issue was decided long ago. Fairly should have raised any such question long ago instead of allowing a default judgment to be entered against it. Moreover, it was not inconsistent for the Committee to collect one preference from Fairly and another from Montague.

### CONCLUSION

Fairly's first three arguments for amending the December 13, 1995 decision are barred by Rule 60(b)(1) which provides a one year limit on an effort to open up a judgment for mistake, inadvertence, or excusable neglect. In support of its motion to vacate the March 25, 1996 default judgment, Fairly has not even met the threshold requirements. Even if it had met the threshold requirements, it is limited to Rule 60(b)(5) which permits amendment of a judgment when there has been a satisfaction of the judgment. Here there is no indication that the Settlement Agreement entered into with Montague released Fairly from the separate debts that Schwinn was found to have paid pre-bankruptcy both to Fairly and to Montague, and which were the basis of preference actions to recover the separate payments to each.

Fairly's motion is therefore entirely denied.